IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Shenzhen Qianhai Phoenix Networks Co., Ltd., | ) ) | |
| Plaintiff / Counter-Defendant, | ) ) ) | Case No. 1:20-cv-05233 |
| | ) ) | Judge Hon. Steven C. Seeger |
| Amazon.com Services, LLC and Amazon.com, Inc., v. | ) ) ) ) ) ) | Mag. Judge Hon. Jeffrey Cole |
| Defendants / Counter-Plaintiffs. | ) ) ) | |

### First Amended Complaint

**NOW COMES** Shenzhen Qianhai Phoenix Networks Co., Ltd. ("Plaintiff"), by and through its counsel at AU LLC and for its First Amended Complaint against Amazon.com Services, LLC and Amazon.com, Inc. (collectively, "Defendants") and alleges as follows:

### Introduction

1. This action is filed to combat Defendants' trademark infringement and unfair trade practices against a boutique health care products company offering face masks under its trademark HONRANE.

### Parties

2. Plaintiff is a private company organized under the laws of China with an office and principal place of Rm 201, Bldg. A, No.1, 1st Qianwan Road, Qianhai Shengang Cooperation Zone, Shenzhen, China.

3. Defendant Amazon.com Services, LLC is a Delaware limited liability company that conducts business throughout the United States including within the State of Illinois and this Judicial District, through its retail sales operation on the Amazon.com marketplace. Defendant

Amazon.com Services, LLC targets the United States, including Illinois and this Judicial District, and has sold, and on information and belief, will continue to sell HONRANE branded face masks ("Infringing Products") to consumers within the United States, including the State of Illinois and this Judicial District.

4. Defendant Amazon.com, Inc. is a Delaware Corporation that conducts business throughout the United States including within the State of Illinois and this Judicial District, through the operation of its ubiquitous Amazon.com marketplace. Defendant Amazon.com, Inc. targets the United States, including Illinois and this Judicial District, and has sold and/or shipped, and on information and belief, will continue to sell and/or ship the Infringing Products to consumers within the United States, including the State of Illinois and this Judicial District. Amazon.com, Inc. and Amazon.com Services LLC are united in interest and shall be referred to, individually and collectively, as "Defendants."

## Jurisdiction and Venue

5. This Court has original subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1051, *et seq.,* and 28 U.S.C. §§ 1331, 1338(a)-(b).

6. This Court has jurisdiction over the claims herein arising under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each Defendant directly targets its business activities toward consumers in Illinois and this Judicial District. Specifically, Defendants shipped at least one Infringing Product to residents of Illinois and on information and belief, have shipped numerous Infringing Products to this State and Judicial District. Further, Defendants

operate a commercial, fully-interactive online marketplace through which residents of Illinois and this Judicial District can purchase products being offered and sold under spurious versions of Plaintiff's trademark. Defendants have targeted sales from residents of Illinois and this Judicial District by selling the Infringing Product directly on its marketplace and offers shipping to addresses within Illinois and this Judicial District. Defendants have committed tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## Plaintiff's Business

8. Since 2017, Plaintiff has been engaged in the design, distribution, and sale of various personal care products (collectively, the "Plaintiff Products") on an international basis, including within the United States, under its trademark HONRANE (the "Mark"). The Plaintiff Products are popular on the market and its trademark is recognized by consumers.

9. Plaintiff has spent considerable resources growing and protecting its brand.

10. Plaintiff is the owner of all rights, title and interest in and to the Mark.

11. Plaintiff uses its Mark in connection with the marketing of its products within the U.S.

12. Plaintiff has built substantial goodwill in and to the Mark which is a recognized and valuable asset of Plaintiff.

13. Plaintiff has continuously used the Mark in U.S. interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Plaintiff Products since as early as May 2017.

14. Genuine Plaintiff Products have become popular, driven by Plaintiff's elevated quality standards and innovative designs. Genuine Plaintiff Products are recognizable among the consuming public and the Mark identifies, in the United States and around the world, high-quality personal care products offered by Plaintiff.

15. Genuine Plaintiff Products have been distributed, promoted and sold on Amazon through select licensed dealers. Plaintiff's sales of Plaintiff Products have been significant.

16. As a result of Plaintiff's longstanding use of its Mark in association with its high-quality products, extensive sales, and significant marketing activities, the Mark has achieved recognition among the consuming public and throughout U.S. interstate commerce.

17. The Mark is exclusive to Plaintiff and appears clearly on all Plaintiff Product packaging and related advertisements. Plaintiff has expended substantial time, money, and other resources to develop, advertise, promote, and protect the Mark. Accordingly, products bearing the Mark are widely recognized and exclusively associated by the consuming public and the industry as being high-quality personal products sourced from Plaintiff.

18. The Mark is distinctive when used in association with the sale of Plaintiff's products, signifying to the purchaser that the products come exclusively from Plaintiff and are made to Plaintiff's material specification.

**The Problem of Spurious Masks**

19. The coronavirus pandemic, in light of recommendations (if not outright orders) from federal, state, and local government officials, has resulted in the explosion in the demand and sales of face masks.[1]

20. Unfortunately, certain commercial enterprises have attempted to capitalize on the rush to obtain these products, and unlicensed face masks have become a serious problem,[2] prompting official guidance from the U.S. Centers for Disease Control (CDC)[3] and other private agencies.[4]

---

[1] https://www.nytimes.com/2020/02/06/business/coronavirus-face-masks.html, last accessed December 9, 2020.
[2] https://www.businessinsider.com/coronavirus-china-confiscated-over-31-million-counterfeit-face-masks-report-2020-2
[3] https://www.cdc.gov/niosh/npptl/usernotices/counterfeitResp.html, last accessed December 9, 2020
[4] https://success.ada.org/~/media/CPS/Files/COVID/ADA_TipsToAvoidCounterfeitMasks.pdf

21. Unlicensed face masks, produced without the authorization of brand owners are dangerous, insofar as they are being misrepresented as having characteristics of the genuine product for which they are being confused; instead, their provenance is questionable if not completely unknown, and thus whatever performance or functional purpose the user presumes them to have is in-fact unknown.

## Defendant's Unlawful Conduct

22. Defendants frequently offered to sell face masks under listings created by Plaintiff's authorized distributors on Amazon.com for the sale of HONRANE-branded face masks. The practice, often called "tag-along," is a special mechanism on Amazon.com under which sellers tag along another's listing when the products offered are identical.

23. An example of Defendants' "tag along" listings for Plaintiff's Products using Plaintiff's Mark and Plaintiffs imagery are attached hereto as **Exhibit A**.

24. Amazon's tag-along practice occurred in an intermittent manner presumably to avoid detection.

25. Plaintiff observed multiple incidents of Amazon tagging along listings with HONRANE-branded face masks, and Plaintiff was able to conduct two (2) test purchases.

26. Each of the test purchases, which were made through Defendants' "tag along" listings using Plaintiff's Mark, revealed that the products in-fact sold and shipped by Defendants are not Plaintiff's products.

27. Specifically, on July 12, 2020, Plaintiff placed an order from Defendants' tag-along buying option, and received the order shipped by Defendants on or about July 23, 2020. The order ID for the purchase is 112-3630535-2148226. The product received was determined to be not-genuine as, *inter alia*, it did not arrive in HONRANE-branded packaging and contained a "product qualified certificate" showing the product was made by a manufacturer that Plaintiff

does not utilize. True and correct copies of photographs of the first test purchase are attached hereto as **Exhibit B**.

28. Further, on August 12, 2020, Plaintiff placed another order from Defendants' tag-along buying option, and received the order shipped to Illinois by Defendants on or about August 15, 2020. The order ID for the second test purchase is 111-4835745-3876206. The product received was determined to be not-genuine as, *inter alia*, it did not arrive in HONRANE-branded packaging and was otherwise bereft of any source markings. True and correct copies of photographs of the second test purchase are attached hereto as **Exhibit C**.

29. Even after this lawsuit was initiated, Defendants continued to use the Mark to sell unauthorized face mask products. On October 27, 2020, Plaintiff placed another order from Defendants' tag-along buying option, and received the order shipped to Illinois by Defendants on or about October 30, 2020. The order ID for the third test purchase is 111-8245270-5053822. The product received was determined to be not-genuine as, *inter alia*, it did not arrive in HONRANE-branded packaging and was otherwise bereft of any source markings. True and correct copies of photographs of the third test purchase are attached hereto as **Exhibit D.**

30. Plaintiff has not licensed or authorized the Defendants to use the Mark to offer and sell HONRANE-branded products which are not manufactured under license by Plaintiff or its subsidiaries, and Plaintiff not licensed or authorized the Defendants to use the Mark to sell products made by third-parties.

31. Defendants, without authorization, were repeatedly using the Mark to sell face mask products which were produced without authorization from or license by Plaintiff, but instead were sourced by third-parties outside the control of Plaintiff.

32. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and will likely continue to use the Mark in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products.

33. As is shown in **Exhibit A**, the Defendants offer shipping to Illinois. On information and belief, Defendants have sold and shipped numerous Infringing Products into Illinois and this Judicial District.

34. Defendants' unauthorized use of the Mark in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including with respect to the sale of such products into the United States, including specifically Illinois and this Judicial District, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is harming Plaintiff.

**Count I - False Designation of Origin, Passing Off, and**

**Unfair Competition (15 U.S.C. § 1125(a))**

35. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 34.

36. The Mark is a distinctive trademark.

37. Plaintiff is the owner of the Mark.

38. Defendants' advertising, distribution, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, and/or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

39. By using the Mark in association with the advertising, distribution, offering for sale, and sale of the Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the true origin and sponsorship of the Infringing Products.

40. Defendants' repeated false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public involves the willful use of spurious marks and is a willful violation of 15 U.S.C. § 1125.

41. Defendants' wrongful advertisement, offering to sell, and sale of Infringing Products have directly and proximately caused injuries and damage to Plaintiff.

42. Plaintiff has no adequate remedy at law and will suffer irreparable harm to its reputation and goodwill of its well-known Mark if Defendants' actions are not enjoined.

**Count II - Violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.)**

43. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 42.

44. Defendants have engaged in acts which violate Illinois law including, without limitation: passing off their Infringing Products as those of Plaintiff; cause a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to the affiliation, connection, or association with genuine Plaintiff Products; representing that their products have Plaintiff's approval when they do not; and engaging in other conduct as described herein which creates a likelihood of confusion or misunderstanding among the public.

45. Defendants' foregoing acts constitute willful violations of the Illinois Uniform Deceptive Trademark Practices Act, 815 ILCS § 510, et seq.

46. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known Mark if Defendants' actions are not enjoined.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Shenzhen Qianhai Phoenix Networks Co., Ltd., prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be enjoined and restrained from:

    a. using the Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Mark;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Mark;

    c. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the Mark and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Mark, or any reproductions, counterfeit copies, or colorable imitations thereof;

    f. operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale products or inventory not authorized by Plaintiff which bear the Mark;

2) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

3) That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, 815 ILCS § 510/3, and other applicable law; and

4) The Plaintiff be awarded any and all other relief that this Court deems just and proper.

Dated December 9, 2020

    Respectfully Submitted

    /s/Adam E. Urbanczyk
    Adam E. Urbanczyk
    AU LLC
    564 W. Randolph St. 2nd Floor
    Chicago, IL 60661
    (312) 715-7312
    (312) 646-2501 (fax)
    adamu@au-llc.com

    *Counsel for Plaintiff Shenzhen Qianhai Phoenix Networks Co., Ltd.*